IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
February 19, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Tallulah Costa
DEPUTY CLERK

ERIC G. B.,[1]  )
                )
　Plaintiff     )
                )
v.              )     Civil Action No. 7:25-CV-00231
                )
FRANK BISIGNANO, )    By: Hon. Michael F. Urbanski
Commissioner of Social Security, )  Senior United States District Judge
                )
　Defendant     )

## MEMORANDUM OPINION

Plaintiff Eric G. B. ("Eric") filed this action challenging the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 423 and 1381a. Eric argues that the determination of the administrative law judge ("ALJ") that he is not disabled is not supported by substantial evidence. Pl.'s Br., ECF No. 14. The Commissioner filed a response arguing that substantial evidence supports the Commissioner's determination. Comm'r's Br., ECF No. 22.

As discussed more fully below, the court finds that substantial evidence does not support the ALJ's determination that Eric is not disabled. Accordingly, the Commissioner's determination that Eric is not disabled is **VACATED** and this case is remanded for further development in accordance with this opinion.

---

[1] Due to privacy concerns, the court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

## I. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990), and Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). The court will uphold a Social Security disability determination if "'(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings.'" Oakes v. Kijakazi, 70 F.4th 207, 212 (4th Cir. 2023) (quoting Arakas v. Comm'r Soc. Sec. Admin., 983 F.3d 83, 94 (4th Cir. 2020)).

A court may neither undertake de novo review of the Commissioner's decision, reweigh conflicting evidence, nor substitute its judgment for that of the ALJ. Id. Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

Nevertheless, the court does not "'reflexively rubber-stamp an ALJ's findings.'" Oakes, 70 F.4th at 212 (quoting Arakas, 983 F.3d at 95). Remand is appropriate when the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." See Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"). See also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## II. Claim History

Eric was born in 1973 and completed four or more years of college. R. 205, 264. He has past relevant work as an order picker, a bindery operator, an electronics assembler, and a motor vehicle assembler. R. 63–65. He filed his application for benefits on September 14, 2021, alleging an onset date of June 26, 2020, later amended to August 15, 2021. R. 205, 43. He alleges disability because of a left knee injury that prevents him from standing and walking, and pain in his left hip. R. 263, 82. He also has hearing loss, uncontrolled diabetes, and problems with his left shoulder. R. 44. His reported symptoms include his left knee popping and locking up which causes him to fall two or three times per day, trouble getting out of bed, difficulty sitting, standing, and walking, feeling groggy from medication, trouble balancing, trouble reaching overhead and in front, and trouble hearing. R. 48–57.

3

The ALJ issued his determination following the administrative hearing, applying the five-step evaluation process described in the regulations. R. 14–30.[2] The ALJ first found that Eric met the insured status requirements through December 31, 2026.[3] He had not engaged in substantial gainful activity since his alleged onset date of August 15, 2021. The ALJ found that Eric had severe impairments of left shoulder arthralgia/bursitis, degenerative joint disease of the left knee status post medial meniscus tear and repair, hip abductor tendinitis, obesity, sensorineural hearing loss, chronic otitis media, and eustachian tube dysfunction. He further found that Eric's impairments, either singly or in combination, did not meet or equal a listed impairment. R. 16–21.

The ALJ next determined that Eric has the residual functional capacity ("RFC") to do light work as defined in 20 C.F.R. 404.1567(b), with the following additional limitations: standing and walking for a total of four hours in an eight-hour day, no climbing of ladders, ropes, or scaffolds, occasionally crouching, crawling, kneeling, climbing ramps and stairs, and

---

[2] The ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio, 780 F.3d at 634-35. At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Monroe, 826 F.3d at 178–79.

[3] Records from the Social Security Administration indicate that Eric's "date last insured" was December 31, 2025. R. 80, 81. The court need not resolve this issue for purposes of Eric's pending application for benefits.

frequently balancing and stooping. He could occasionally reach overhead bilaterally, and occasionally push and pull and operate foot controls with the bilateral lower extremities. He should avoid concentrated exposure to wetness and vibration and should not work around hazards such as exposed high places and moving mechanical parts. He could work in no more than a moderate noise environment. R. 22.

Based on the testimony from a vocational expert, the ALJ found that Eric could not return to any of his past relevant work. However, he could do other work in the economy, such as that of a marker, a garment sorter, and a classifier, and thus was not disabled. R. 29. Eric sought review from the Appeals Council, which denied review on February 12, 2025. R. 1–5. This lawsuit followed.

Eric argues that the ALJ erred in several ways when he determined that Eric was not disabled: (1) The ALJ's assessment of Eric's RFC is not supported by substantial evidence; (2) the ALJ failed to explain why he found unpersuasive the opinion of one of Eric's treating physicians that he was limited to sedentary work with additional limitations, including his use of a cane and his need for a brace as necessary; (3) the ALJ failed to properly consider Eric's left shoulder impairment; (4) the ALJ failed to make specific findings about whether Eric's impairments would cause pain and fatigue that would cause him to be unable work a full workday and workweek; and (5) the ALJ's assessment of Eric's subjective allegations is not supported by substantial evidence.

## III. Analysis

Eric's argument that the ALJ's assessment of his RFC is not supported by substantial evidence is dependent on his other arguments regarding the opinion of one of his treating physicians, the evidence of Eric's left shoulder impairment, Eric's ability to sustain work throughout an entire workday and workweek, and the ALJ's assessment of Eric's subjective allegations. Each of these arguments is addressed in turn.

A claimant's RFC "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184 at *2 (S.S.A. 1996). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

In assessing the RFC, the adjudicator should consider the claimant's medical history, medical signs, and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured environment, and work evaluations, if available. Id. at *5. The

6

RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. at *7.

The RFC must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. SSR 96-8p, 1996 WL 374184 at *1, 3. Physical abilities set out in 20 C.F.R. 404.1545(b) and 416.945(b) include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching.[4] The ALJ also must explain how he considered and resolved any material inconsistencies or ambiguities in the record. SSR 96-8p, 1996 WL 374184 at *7.

### A. Shoulder Impairment

Eric testified at the hearing that he was unable to put his arm behind his back and could not "really reach above [his] head or in front of [himself]." R. 54–55. In the RFC, the ALJ limited Eric to occasionally reaching overhead bilaterally.[5] The ALJ noted that Eric began complaining of left shoulder pain in December 2022 and there were findings of tenderness and decreased range of motion. R. 25. Eric was referred to physical therapy for his shoulder

---

[4] Mental abilities are set out in §§ 404.1545(c) and 416.945(c). Abilities set out in paragraph (d) of the regulation include those affected by skin impairments or epilepsy, impairment of vision, hearing, or other senses, or impairments which impose environmental restrictions.

[5] "'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." Titles II and XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity For Less Than a Full Range of Sedentary Work, SSR-96-9p, 1996 WL 374185, at *3 (S.S.A. 1996).

7

in August 2023, which resulted in significant improvements in his range of motion and nearly normal strength. R. 25, 896-97. The ALJ accommodated Eric's shoulder impairment by limiting him to occasional overhead reaching bilaterally. R. 25.

Eric argues that the ALL cherry-picked evidence regarding his shoulder pain and limited range of motion from February and April 2023 and ignored evidence from his discharge from physical therapy in August 2023 that continued to show limitations in left shoulder flexion and abduction along with diminished strength and continued tenderness. Pl.'s Br., ECF No. 14 at 28–29. However, the record shows that while Eric did have significant limitations in early 2023, by the time he completed physical therapy in August 2023, he was much improved. Although he still had some limitations in range of motion, he had 5/5 strength in both shoulders, except for 4+/5 strength in his left shoulder on abduction and external rotation. R. 897. The physical therapist commented that Eric's discharge prognosis was good and he had made great progress with his right upper extremity. His range of motion was within normal limits except for behind his back which was still "slightly tight." His strength was within normal limits and he was instructed to work more on his posterior capsular mobility now that he was pain free. R. 898. The ALJ accommodated Eric's slightly reduced strength and range of motion by limiting him to occasional overhead reaching.

Based on the record, it does not appear that the ALJ cherry-picked evidence from the record. Rather, the ALJ examined the record as a whole and assessed a reaching restriction based on the fact that Eric's shoulder strength and mobility improved over time to being just

shy of "within normal limits." Therefore, the ALJ's assessment of Eric's shoulder impairment is supported by substantial evidence and remand is not warranted on this issue.

### B. Opinion of Treating Physician

Under the current regulations, when considering medical opinions, an adjudicator does not defer or give specific evidentiary weight to any medical opinion, including those from a treating source. Rather, the adjudicator must examine the supportability of the opinion by objective medical evidence and supporting explanations presented by the medical source, the consistency of the opinion with the evidence from other medical and non-medical sources in the record, the source's relationship to the claimant, the source's specialization, and any other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c and 416.920c. The most important factors are supportability and consistency. Id. at §§ 404.1520c(a) and 416.920c(a).

Eric sustained an injury to his left knee on June 26, 2020, and began physical therapy for the knee on August 3, 2020. R. 250, 593.[6] An MRI in September 2020 showed a medial meniscus tear in the knee which appeared to be a horizontal cleavage of the medical meniscus. He also had minimal degenerative changes of the articular cartilage. R. 649. James Farmer, M.D., performed arthroscopic surgery on Eric's knee on October 19, 2020. R. 992–93. Eric resumed physical therapy for his left knee on October 26, 2020. R. 563. At that time, he had a severely antalgic gait, was using a cane, and was limited to walking about 50 feet. R. 565.

---

[6] The record shows that Eric also attended physical therapy for low back pain from January 15, 2020, to March 24, 2020. R. 596–615. At discharge it was noted that he had improved with regard to pain in his back and had gained strength. R. 597.

9

Over the next two months, Eric reported pain and popping in his left knee, and several incidents where his knee buckled and he fell or almost fell. He was afraid to walk without his cane when he was outside. He wore a knee brace all the time. Taping his knee helped reduce the popping. R. 471–565.

On January 13, 2021, Dr. Farmer noted Eric's continued problems with pain and popping in his left knee. Dr. Farmer commented that Eric's symptoms overall were worse than before surgery. He reported constant sharp 10/10 pain in both the medial and lateral aspect of his left knee and his kneecap was popping so hard that it felt like it would "'rise up and then collapse down.'" R. 636. His range of motion was 0-135, his patella tracked normally, his skin was intact, he had no effusion or joint line tenderness, he had 5/5 strength in his quadriceps and hamstrings, and McMurray's, patellar apprehension, and patellar grind test were negative. R. 637. Dr. Farmer recommended a viscosupplementation injection, noting it would take two to three weeks to have a beneficial effect, and advised Eric to continue with physical therapy. R. 635. Dr. Farmer limited Eric to sedentary work with no climbing of stairs or ladders to get to the work site, and no squatting or carrying of objects weighing more than five pounds. Id.

On March 18, 2021, Eric continued to report a significant amount of popping in his knee that was reproducible and consistent and made his knee feel unstable. R. 628. On April 12, 2021, Dr. Farmer noted that an MRI showed some grade 3 chondromalacia on the medial femoral condyle with degenerative signal within the posterior horn. Dr. Farmer prescribed a medial off-loader brace with the hope that it would provide him enough pain relief to allow

him to return to less sedentary activities. At that point, Eric had returned to work in a light duty capacity. R. 626.

On May 26, 2021, Eric saw Dr. Farmer and reported a 50 percent reduction in knee pain with use of the brace, but that he still was having quite a bit of pain even in his sedentary job as he had to walk long distances in a warehouse. Eric reported that his pain was 9/10 with activity. On examination, Dr. Farmer noted a that Eric had a normal gait, range of motion of 0-135, reproducible patellofemoral pop when returning from a flexed position, "moderate quad atrophy," "quad tone fair," and no extensor lag. R. 624. Dr. Farmer stated that Eric had reached maximum medical improvement and would have future issues with his knee that would need to be addressed, including injections and possible arthroplasty. He added that Eric could continue with sedentary work with no prolonged standing or walking, could use the brace and cane as needed, and could take anti-inflammatory medications as needed. R. 623.

Eric was discharged from physical therapy on May 4, 2021, with a notation that "Worker's comp did not authorize further treatment after his last MRI." R. 371. His prognosis was described as "fair." He continued to have left knee popping and locking. Weakness was noted in the left quadriceps, and he was using a single point cane because he was fearful that his left leg would give out on him. It was noted that he could stand for 15 minutes at a time, but could not walk functional distances for work without a cane. R. 373.

Eric saw a nurse practitioner for diabetes management on June 17, 2021, and reported that he was walking more. R. 723. On January 12, 2022, Eric saw Alfred Durham, M.D., complaining of left knee and hip discomfort. He was using a brace and walking with a cane.

11

R. 803. Imaging was mostly within normal limits. Id. On examination, Eric was described as having good muscle tone. He stood with a level pelvis and appeared to be sore over the hip abductors along the left iliac crest and in the abductor tendon region on the left. He appeared to have an antalgic gait when bearing weight on the left. He had good external and internal rotation of both hips, but internal rotation of his left knee produced some tenderness in the knee. Dr. Durham said that when Eric walked without the cane, he had "a little bit more of an antalgic gait" but could walk with a stable balanced gait. Dr. Durham injected Eric's hip with Marcaine 0.5% and Kenalog, and Eric was able to walk with less pain after the injection. Dr. Durham thought Eric might have a labral tear or tear to the left hip abductors. Eric was advised to return in six weeks if he were still in pain. R. 804–05.

On May 5, 2022, Eric's diabetes caregiver noted that he had pain in his left knee and was wearing a brace. R. 781. On June 22, 2022, he told his diabetes caregiver that he was active and mows the grass. R. 765. On July 28, 2022, at a visit to address shortness of breath and tachycardia, Eric was noted to be wearing his left knee brace. R. 808. In a visit to establish care with a new provider on October 20, 2022, Eric reported that he was having pain in his right hip which he thought might be due to overcompensation related to his previous left knee surgery. He said he was ambulatory with the assistance of a cane. His gait was described as steady, his range of motion was normal, and he had 5/5 strength in all extremities. R. 852–55. At an annual physical on April 20, 2023, Eric reported that he was feeling well except for left shoulder pain. He was observed to have a normal, steady gait, and normal range of motion

and strength in all extremities. R. 864. At a diabetes-related visit on June 30, 2023, Eric was described as having a normal range of motion. R. 879.

Eric argues that the ALJ did not adequately explain why he found unpersuasive the opinion of Dr. Farmer on January 13, 2021, that Eric was limited to sedentary work with no climbing of ladders or stairs, no squatting, no carrying objects greater than five pounds, and that Eric would use a cane or brace as needed. Pl.'s Br., ECF No. 14 at 25. When addressing Dr. Farmer's opinion, the ALJ found it unpersuasive because it was not supported by his examination findings that Eric had medial and lateral patellar tenderness with up to 130 degrees range of motion, trace effusion, full strength, intact sensation, and negative McMurray's, patellar apprehension, and patellar grind tests. R. 28, 637. The ALJ also found that these limitations were not consistent with multiple providers who had observed Eric with a normal gait and normal strength in his lower extremities. R. 28.

The ALJ also found unpersuasive Dr. Farmer's May 2021 opinion that Eric could continue with sedentary work only with no prolonged standing or walking, and that he would continue to use the brace and cane as needed. The ALJ said the opinion was vague regarding specific functional limitations and was not supported by contemporaneous observations of a normal gait, range of motion to 135 degrees, and intact strength and sensation. In addition, it was not clear how Dr. Farmer was defining "prolonged," which made it difficult to determine consistency with the overall record. Finally, the ALJ found the use of the cane inconsistent with the record, as providers who saw Eric in 2022 and 2023 regularly noted normal gait and strength. R. 28, 623–24.

13

This explanation by the ALJ is sufficient to explain why he found Dr. Farmer's opinion unpersuasive, as he cites evidence in the record showing findings by Dr. Farmer and other providers that Eric had almost full range of motion and full strength in his lower extremities. Moreover, it is worth noting that Dr. Farmer's opinions regarding Eric's limitations were made in January 2021, approximately two months after his knee surgery, and May 2021, approximately seven months after his surgery. Medical records from 2022 mention that Eric continued to complain of knee and hip pain and show that he continued to use the knee brace and cane, but also show that Eric had good muscle tone, and could walk with a stable, balanced gait, albeit with a more antalgic gait when he did not use his cane. In 2023, Eric did not report knee or hip pain at his annual physical and was observed to have a normal, steady gait, and normal range of motion and strength in all extremities.

Eric claims that the ALJ cherry-picked evidence and he cites medical records that were consistent with Dr. Farmer's opinions regarding Eric's limitations. However, while some of the earlier medical records are more consistent and supportive of Dr. Farmer's opinion, the records were closer to the time of Eric's surgery and before his alleged onset date. In any event, it is the province of the ALJ and not the court to resolve evidentiary conflicts. The ALJ did that in this case and his finding that Dr. Farmer's opinions regarding Eric's limitations are unpersuasive is supported by substantial evidence.

### C. Subjective Allegations

When evaluating a claimant's reported symptoms, the ALJ first considers whether there is an underlying medically determinable physical or mental impairment that could reasonably

be expected to produce the individual's symptoms. Once an underlying physical or mental impairment is established, the ALJ evaluates the intensity and persistence of symptoms to determine the extent to which the symptoms limit a claimant's ability to perform work-related activities. Social Security Ruling 16-3P Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). In making the second determination, the ALJ first looks at the objective medical evidence. Id. at *5. If the ALJ cannot make a disability determination that is fully favorable based on objective medical evidence, other evidence, such as statements from the claimant, medical sources, and other sources are considered. Id. at *6.

In other words, the finding that an impairment could reasonably be expected to produce pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the symptoms. 20 C.F.R. § 404.1529(b). And while there need not be objective evidence of the pain itself or of its intensity, Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 95 (4th Cir. 2020) (citations omitted), the adjudicator is directed to consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between a claimant's statements and the rest of the evidence, including the claimant's history, the signs and laboratory findings, and statements by medical sources or other persons about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(c)(4).

The ALJ correctly cited the standard for evaluating subjective complaints, R. 22, and then summarized Eric's testimony and disability function reports. R. 22–23. The ALJ next summarized the medical records. R. 23–25. The ALJ found that Eric's claim that his

15

impairments were disabling were inconsistent with the medical records overall. While records from the first few months of the period of review showed tenderness, decreased range of motion, an antalgic gait, and in 2022, soreness in his hips, he received an injection in his hips in January 2022 and did not thereafter complain about hip pain. R. 25. The ALJ further noted that after January 2022, he had normal musculoskeletal findings on examination for his lower extremities, including normal strength, intact sensation, and a normal gait. Id. With respect to his shoulder, while providers noted tenderness and decreased range of motion shortly after he started complaining about his shoulder, he completed physical therapy less than twelve months after initially reporting the issue with significant improvements in his range of motion and nearly normal strength. Id.

The ALJ explained that he accommodated Eric's issues with his left shoulder, his left knee and hip, and his obesity, by limiting him to light work with the additional limitations of standing and walking only four hours per day to accommodate the findings of tenderness and somewhat limited range of motion from the beginning of the period of review. He also added additional postural limitations and provided for no climbing ladders, ropes or scaffolds. As additional accommodations for Eric's musculoskeletal pain, the ALJ limited him to only occasional exposure to wetness and vibration and no work around hazards. Id.

The court finds that the ALJ's assessment of Eric's subjective allegations is supported by substantial evidence. The ALJ discussed the consistency and supportability of Eric's subjective statements with the other evidence in the record and cited evidence in the record in support of his assessment. The ALJ also explained how he accommodated Eric's allegations

to the extent he found them to be consistent and supported by the other evidence of record. The court is not left to guess at how the ALJ reached his conclusions regarding Eric's subjective allegations and this issue presents no grounds for remand.

### D. Ability to Work a Full Day and Week

Eric argues that the ALJ failed to make specific findings about whether his impairments would cause pain and fatigue that would render him unable work a full workday and workweek. Assessment of a claimant's RFC contemplates his ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, defined as eight hours per day for five days per week, or an equivalent work schedule. SSR 96-8P, 1996 WL 374184, at *2. Eric is correct that the ALJ did not make explicit findings that he could perform sustained work activities on a regular and continuing basis.

To be sure, the ALJ summarized Eric's testimony about his pain and limited mobility and concluded that his allegations were not entirely consistent with the other evidence in the record. He summarized the medical evidence that both supported and contradicted Eric's testimony that he could stand, walk, and sit for only very limited periods of time. The ALJ considered the opinions of the state agency experts who found Eric could do light work, but added additional restrictions to accommodate Eric's knee, hip, and shoulder impairments. And, after considering the record, the ALJ determined that Eric could walk and stand for a total of four hours in a workday, could never climb ladders, ropes, or scaffolds, could occasionally crouch, crawl, kneel, climb ramps and stairs, reach overhead bilaterally, occasionally push and pull and operate foot controls with the bilateral lower extremities, and

17

frequently balance and stoop. Nevertheless, despite summarizing Eric's allegations and the evidence in the record and making findings based on the evidence, the ALJ did not complete a proper RFC assessment because he did not address Eric's ability to work on a regular and continuous basis.

Eric raised this issue to the ALJ at the administrative hearing when his counsel stated that Eric was unable to sit or stand for very long because of issues with pain and balance. He had difficulty sleeping at night which caused him to be fatigued the next day and he would lie down throughout the day either because of pain or fatigue. R. 44. Eric testified that he alternated between sitting, standing, walking, and lying down all day because of pain in his knee and hip. R. 50–51. He stated that he would sometimes lie down two or three times per day for an hour or two at a time to relieve pain. R. 52.

The vocational expert testified that a person could be off task no more than ten percent of the day and could not miss more than one day of work per month and maintain employment. R. 68. He further testified that if, in addition to having a sit/stand option, a person needed to walk away from the workstation for ten or fifteen minutes, the amount of time away from the workstation would not be tolerated. R. 68–69. While, as set forth above, the ALJ did not find Eric's testimony fully consistent with or supported by the medical evidence, that did not relieve him of the obligation to consider whether and how much pain or other symptoms would cause him to be off task during a workday. The regulations are clear that the issue must be addressed. See SSR 96-8p (stating that the RFC assessment must include a discussion of the individual's ability to do sustained work activities on a regular and

18

continuing basis, defined as eight hours per day, five day per week, or an equivalent work schedule.)

The court recognizes that the Fourth Circuit in Hines v. Barnhart, 453 F.3d 559, 363 (4th Cir. 2006), found that an RFC assessment that complied with SSR 96-8p "implicitly contained a finding that [the claimant] physically is able to work an eight hour day." However, in this case, where Eric raised the issue of whether he could maintain employment for a full workday and workweek based on his need to change position and occasionally lie down during the day to relieve pain and fatigue, this implicit finding is insufficient, as it leaves the court to guess at whether and how the ALJ considered the issue. See Mascio, 780 F.3d at 636–37 (remanding in part because although ALJ concluded that claimant could perform certain functions, he said nothing about the claimant's ability to perform them for a full workday); Megan. S. v. Kijakazi, No. 3:20-CV-54, 2022 WL 985865, at *3–4 (W.D. Va. Mar. 31, 2022) (Moon, J.) (quoting 20 C.F.R. § 404.1545(b)) (remanding where ALJ failed to assess whether claimant's impairments would cause her to be unable to work on a "'regular and continuing basis.'")

## IV. Conclusion

The court concludes that the ALJ erred when he did not assess whether Eric's impairments would affect his ability to work on a regular and continuing basis, defined as eight hours per day, for five days a week, or an equivalent work schedule. Accordingly, the court **VACATES** the Commissioner's decision that Eric is not disabled and **REMANDS** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further development

in accordance with this opinion. This matter is **DISMISSED** and **STRICKEN** from the active docket of the court.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: February 17, 2026

Michael F. Urbanski
Senior United States District Judge